IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**T.W., P.M.**, and
**DISABILITY RIGHTS FLORIDA**,
on behalf of themselves and all others
similarly situated,

    Plaintiffs,

v.

                                  CASE NO.:

**ESTHER JACOBO,** in her official
Capacity as Interim Secretary of the Florida
Department of Children and Families; and
**ELIZABETH DUDEK**, in her official Capacity
As Secretary of the Agency for Health Care
Administration,

    Defendants.

**CLASS ACTION COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This is a state-wide class action brought on behalf of over 300 individuals with psychiatric disabilities that are unnecessarily segregated in Florida state psychiatric treatment facilities. By failing to provide adequate community placements, the Defendants have created a situation in which individuals with psychiatric disabilities are warehoused in large state facilities.

2. Plaintiffs allege that the defendants discriminate against persons with disabilities in violation of Title II of the Americans with Disabilities Act (ADA). 42 U.S.C. §§ 12131-12134.

3. The defendants, through policy and practice, unnecessarily segregate hundreds of individuals with mental illness in institutions that are not the appropriate setting for their needs.

4. The defendants engage in these policies and procedures even though it is not in the best interest of either those they serve or the citizens of the state of Florida.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff's federal claims are made pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134.  Relief can be appropriately granted by this Court pursuant to 28 U.S.C. §§ 2201-2202

6. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) as all of the defendants reside in this district.

## NAMED PLAINTIFFS

T.W.

7. Plaintiff T.W. is a 32-year-old, African-American male committed under Fla. Stat. Chap. 394 on 12/18/2009 and has since resided at Florida State Hospital.

8. T.W. remains committed with the diagnosis of Psychotic Disorder Secondary to Multiple Medical and Delusional Conditions and Dementia, Secondary to Medical Conditions.

9. T.W. has expressed the desire to live in the community.

10. T.W.'s providers believe that he could be managed in a lesser restrictive setting and have recommended that he be discharged to the community.

11. T.W. has been seeking placement in the community since 12/27/2012.

P.M.

12. Plaintiff P.M. 60-year-old, Caucasian female committed under Fla. Stat. Chap. 394 in October of 2010 and is currently residing at the Northeast Florida State Hospital.

13. P.M.'s psychiatric diagnoses include Schizophrenia, Paranoid Type and Substance Abuse.

14. P.M. has expressed the desire to live in the community.

15. P.M.'s providers believe that she could be managed in a lesser restrictive setting and have recommended that she be discharged to the community.

16. P.M. has been seeking placement in the community since 06/19/2012.

DISABILITY RIGHTS FLORIDA

17. Plaintiff Disability Rights Florida, the federally funded protection and advocacy system (hereinafter "P&A") is a not-for-profit corporation.  The P&A maintains offices in Tallahassee, Tampa, and Hollywood.  Its main office is located at 2728 Centerview Drive, Suite 102, Tallahassee, Florida.

18. The P&A's mission is to advance the quality of life, dignity, equality, self-determination, and freedom of choice of people with disabilities through collaboration, education, and advocacy, as well as legal and legislative strategies.

19. Under its federal authority, the P&A is authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for the rights of all persons with disabilities within the state of Florida.

20. Specifically, on behalf of persons with psychiatric disabilities, the P&A is authorized by law to "pursue administrative, legal, and other appropriate remedies to ensure the

protection of individuals with mental illness who are receiving care or treatment in the State." 42 U.S.C. § 10805(a)(1)(B).

21. The P&A has represented and continues to represent persons with psychiatric disabilities in individual actions, class actions, and systemic relief initiatives affecting all such individuals.

22. The defendants' policies adversely affect the substantial interests of the P&A as clients and potential clients are not receiving care in the least restrictive setting and are not being integrated into the community.

23. The P&A has standing to file this action as it provides representation and other legal services to persons with psychiatric disabilities that seek to be integrated into the community. See Florida Institutional Legal Services v. Florida Parole & Probation Comm'n, 391 So. 2d 247, 249 (Fla. 1st DCA 2004).

## DEFENDANTS

### ESTHER JACOBO

24. Defendant Esther Jacobo is the Secretary of Florida's Department of Children and Families (DCF) and is being sued in her official capacity. DCF's mission is to protect the vulnerable, enable self-sufficiency, and advance recovery and resiliency within the state. *See* Fla. Stat. § 20.19

25. DCF's mandate is to evaluate, research, plan, and recommend to the Governor and the Legislature programs designed to reduce the occurrence, severity, duration, and disabling aspects of mental, emotional, and behavioral disorders." Fla. Stat. § 20.19.

ELIZABETH DUDEK

26. Elizabeth Dudek is the Secretary of Florida's Agency for Health Care Administration (AHCA) and is being sued in her official capacity. AHCA is the chief health policy and planning entity for the state, and is responsible for administering Florida's Medicaid Program, including the Waiver Programs. See Fla. Stat. §§ 20.42(3) & 393.0661. AHCA is also responsible for health facility licensure, inspection, and regulatory enforcement. *Id.*

## CLASS ACTION ALLEGATIONS

27. Pursuant to Fed. R. Civ. P. 23 (a) and (b)(2), the named plaintiffs bring this action on behalf of themselves and all other persons similarly situated.

28. The proposed class consists of:

    a. All individuals committed to DCF custody pursuant to Fla. Stat. § 394.467 who are residing in one of the State's treatment facilities who possess both the desire and capability to reside in the community with or without supports; and

    b. Individuals residing in a DCF treatment facility who will possess at a later date the desire and capability to reside in the community with or without supports.

29. <u>Numerosity</u>: The class is so numerous that joinder of all its members is impracticable. At the time of the complaint there were approximately 300 residents of DCF treatment facilities that have been determined ready for placement but cannot be discharged due to lack of placement options. Further, the plaintiffs believe that there are well over 1600 class members because there are currently 1600 individuals residing in Florida's psychiatric treatment facilities. It is unknown to the plaintiffs how many unique

admissions occur in treatment facilities throughout the state, so the actual number of class members is unascertainable to the plaintiffs at this point.

30. <u>Commonality</u>: There are questions of law or fact that are common to all named plaintiffs, as well as to all putative class members including:

   a. Whether defendants' policies unnecessarily cause and perpetuate the segregation and discrimination through continued institutionalization of persons with psychiatric disabilities, violating the ADA's integration mandate as enforced through 42 U.S.C. §1983.

31. <u>Typicality</u>: The claims of the named plaintiffs are typical of the claims of the class as a whole in that the named plaintiffs and purported class are individuals confined to state psychiatric treatment facilities who are ready to be discharged but are unable to integrate back into the community because there is a lack of appropriate placements.

32. <u>Adequate representation</u>: The named plaintiffs will fairly represent and adequately protect the interests of members of the class as a whole.  The named plaintiffs do not have any interests antagonistic to those of other class members.  By filing this action, the named plaintiffs have displayed an interest in vindicating their rights, as well as the claims of others who are similarly situated.  The relief sought by the named plaintiffs is represented by counsel who are skilled and knowledgeable about civil rights litigation, the Americans with Disabilities Act, practice and procedure in the federal courts, and the prosecution and management of class action litigation.

33. The defendants have acted or refused to act on grounds generally applicable to the class, making final injunctive relief appropriate with respect to the class as a whole under Fed. R. Civ. P. 23(b)(2).  Although the specific disabilities of the class members vary, they

share a common need for services provided by DCF, have been found to need and are eligible for the level of care required for placement in a treatment facility, and have been denied an opportunity for full integration into the community. A class action is superior to individual lawsuits for resolving this controversy.

## FACTUAL ALLEGATIONS
### Florida's Mental Health Care System

34. DCF is recognized as the State's mental health authority by the federal Substance Abuse and Mental Health Services Administration (SAMHSA). *See* Fla. Stat. § 394.457(1). DCF oversees the State's system of care for the prevention, treatment, and care of individuals with psychiatric disabilities. Fla. Stat. § 394.457(2)(a).

35. The Deputy Secretary for Substance Abuse and Mental Health (SAMH) reports directly to the Secretary of DCF and has authority over the state mental health system. Fla. Stat. § 20.19(2)(c).

36. DCF is responsible for planning, managing and evaluating a statewide program of mental health services and supports, including community programs, crisis services, state residential treatment facilities, and children's mental health services.

37. DCF purports to offer a wide range of treatment services to help individuals with mental illness. These services include community programs, crisis services, state residential treatment facilities, and children's mental health services.

38. The system is funded by federal block grants, other federal grants, state general revenue, and Medicaid resources.

39. Mental health services and supports should be community based in the least restrictive setting.

40. DCF states on their website that "Community-based means services and supports located in or strongly linked to the community, in the least restrictive setting supportive of an individual's safety and treatment needs. Services and supports should be delivered responsibly and seamlessly where the person lives, works, learns, and interacts."

41. DCF operates two public state hospitals which provide inpatient mental health services to approximately 1600 individuals with psychiatric disabilities. These hospitals are: Florida State Hospital in Chattahoochee (FSH) and Northeast Florida State Hospital in McClenny (NEFSH).

42. DCF contracts with Geo Care, LLC to operate one private state hospital which provides care for approximately 350 persons with psychiatric disabilities. That hospital is the South Florida State Hospital in Pembroke Pines (SFSH).

43. The Agency for Healthcare Administration (AHCA) is responsible for health care licensure and regulatory enforcement.

44. AHCA licenses and inspects hospitals in the state of Florida including FSH, NEFSH, SFSH, three state mental health treatment facilities. *See* Fla. Stat. § 395.003.

45. AHCA provides regulatory oversight and monitoring of the various managed care organizations in the state. This includes mental health organizations and subcontracted mental health organizations.

46. Florida Statute § 395.003 (5)(a) states, "Adherence to patient rights, standards of care, and examination and placement procedures provided under part I of Chapter 394 shall be a condition of licensure for hospitals providing voluntary or involuntary medical or psychiatric observation, evaluation, diagnosis, or treatment."

47. Florida Statute § 395.1055(5) states, "The agency shall enforce the provisions of part I of Chapter 394, and rules adopted thereunder, with respect to the rights, standards of care, and examination and placement procedures applicable to patients voluntarily or involuntarily admitted to hospitals providing psychiatric observation, evaluation, diagnosis, or treatment." The "agency" reference therein is the Agency for Health Care Administration.

48. Florida Administrative Code Rule 59A-3.30, regarding Goals, Policies and Procedures, requires the hospital to have a plan describing ways in which the program provides or makes referrals or arrangements for other medical and health care relating to discharge and follow-up care.

49. Florida Administrative Code Rule 59A-3.278, regarding Rehabilitation, Psychiatric and Substance Abuse Programs, requires the hospital to provide to the individual a plan of care including appropriate discharge planning.

50. Florida Administrative Code Rule 59A-3.254, regarding Patient Rights and Care, requires each hospital to coordinate care and to specifically develop and implement discharge policies and procedures that assess the availability of appropriate services to meet identified needs following hospitalization.

51. The Agency for Health Care Administration is charged with enforcing Rules 59A-3.30, 59A-3.278, 59A-3.254. Each of these rules pertains to the putative class of plaintiffs in this complaint.

**Individuals Confined in Florida's Psychiatric Inpatient Treatment Facilities**

52. The individuals served by the State's mental health treatment facilities include persons with mental health diagnoses.

53. The residents of these facilities are 18 years or older who have voluntarily admitted themselves or are involuntarily held by a judicial order.

54. Each of these persons has a condition that substantially limits one or more life activities and is a qualified individual with a disability as defined in the ADA.

55. Individuals residing in the treatment facilities do not object to being placed in settings that are least restrictive.

56. For example, T.W. has made several requests to Disability Rights Florida requesting assistance with discharge.  T.W. has stated in the past that "It's time for [me] to go."  He has expressed excitement that he might be able to leave the facility and live in the community closer to his mother.

57. Many of these individuals are segregated in the state treatment facilities for no other reason than appropriate services do not exist for them in the community.

58. Defendants have failed to provide an adequate mental health treatment system that corresponds to the needs and abilities of Florida citizens with mental health diagnoses.

59. Defendants have failed to design and support a community-based mental health service delivery system that would enable the putative class to receive services in the least restrictive environment.

60. The State's treatment professionals have identified hundreds of individuals currently confined in the State inpatient treatment facilities that can be served in lesser restrictive settings.  *See* Exhibit 1.

61. Florida Statute § 394.467(6)(b) states, "The facility shall discharge a patient any time the patient no longer meets the criteria for involuntary inpatient placement, unless the patient has transferred to voluntary status."

62. In the June Admission/Discharge report from DCF, there were 246 individuals seeking placement throughout the state.  That number includes 61 seeking placement into the community from Florida State Hospital, 107 seeking placement into the community from Northeast Florida State Hospital, and 71 seeking placement into the community from South Florida State Hospital.

63. The June report shows that there were 110 individuals awaiting admission to state treatment facilities.  Of these, 28 were awaiting admission to Florida State Hospital, 27 were awaiting admission to Northeast Florida State Hospital, and 46 were awaiting admission to South Florida State Hospital.

64. Defendants failure to design and support an adequate community-based mental health treatment system has caused delays and prolonged the stay of individuals in receiving facilities while waiting for their admission to the state treatment facilities in contravention of their rule-defined purpose of holding "involuntary patients under emergency conditions or for psychiatric evaluation and to provide short-term treatment."

65. The June report shows that there were 76 admissions to state treatment facilities and 76 discharges.

66. Statewide, 59% of those seeking placement have been waiting more than 60 days to be discharged from a state treatment facility.  In fact, 30% have been waiting for more than 181 days.

67. The average time that individuals must wait for a placement into the community has been largely unchanged for at least the last year.

### Facts Concerning Integration in Florida

68. Florida's mental health treatment facilities are institutions that segregate individuals with mental illness from the community.  The treatment facility milieu discourages the residents from engaging in independent activities of daily living, fosters dependence, and degrades the skills necessary for independent living in the community.

69. Individuals residing in state treatment facilities have limited access to community activities and do not have frequent opportunities to interact with people that do not have disabilities.

70. The State's mental health treatment facilities are not the most integrated setting appropriate to the needs of its residents.  Hundreds of individuals are confined in these facilities, not because of need, but because the State does not provide the necessary services in appropriate quality, quantity, and/or location to allow them to live in the less restrictive and integrated setting.

71. Providing community services and supports for persons with disabilities can generate significant cost savings compared to the cost of institutionalization.  For instance, the State estimates that the average annual cost of inpatient mental health treatment is $100,244, while the estimate for community mental health treatment is $20,000. *See* Exhibit 2.

72. Supported Housing is a setting in which individuals living in their own community receive services to meet their individual needs in a "normal" setting.  It is widely

recognized that the majority of individuals with mental illness can live independently when given the necessary supports and services.

73. DCF's guidelines for supportive housing state that the following do not disqualify a person from receiving supportive housing: severity of disability, history of behavior problems, failure to obtain certain skills, failure of previous housing arrangement, lack of personal financial resources, family opposition, legal guardianship, life choices, and co-occurring disorders.

74. The State's requirements for a person to receive supportive housing are: 18 years or older, receiving mental health services, wants to live in the community, and requires support services to live in the community.

75. Florida Assertive Community Treatment Team (FACT) services are staffed with professionals that provide housing, medication, and flexible funding subsidies to qualified enrollees.

76. There are 32 FACT teams in the state of Florida, each serving 100 individuals.

77. The State estimates that each FACT team saves the state $4,000,700 per year. *See* Exhibit 3.

78. FACT teams are present in some, but not all geographic areas of the state.

**CLAIM FOR RELIEF**
**Americans with Disabilities Act**
**42 U.S.C. §12131 et seq.**

79. Plaintiff incorporates and re-allege paragraphs 1 through 78, as if fully set forth herein.

80. Defendants discriminate against "qualified individual[s] with a disability," within the meaning of the ADA by administering the State's mental health system in a way that

denies hundreds of Floridians with mental illness the opportunity to receive services in the most integrated setting appropriate to their needs.

81. These individuals are qualified to receive services in a more integrated setting and do not oppose receiving services in a more integrated setting.

82. The relief sought would not constitute a "fundamental alteration" of the State's mental health services that the residents require to live in a more integrated setting. Thus, there is no defense for the State's failure to provide services in a more integrated setting.

83. Defendants' actions and omissions as alleged herein constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulations.

## REQUESTS FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

84. Declare that the Defendants are in violation of Title II of the Americans with Disabilities Act by unnecessarily segregating individuals in institutions;

85. Provide injunctive relief preventing Defendants from administering mental health services in a setting that unnecessarily isolates and segregates individuals with disabilities from the community;

86. Provide injunctive relief such that Defendants are required to administer mental health services in the most integrated setting appropriate to the needs of the individuals with disabilities;

87. Award reasonable attorney's fees, costs, and expenses to the Plaintiffs;

88. Retain jurisdiction over this action to ensure Defendants' compliance with the ADA; and

89. Award such other and further relief as it deems necessary, just, and proper.

SUBMITTED this 15th day of August, 2013,

_/S/_____
David A. Boyer
Florida Bar #90917
Disability Rights Florida
davidb@disabilityrightsflorida.org
1930 Harrison St., Ste 104
Hollywood, FL 33020
Tel: 850-488-9071
Fax: 850-488-8640
Counsel for Plaintiffs

Amanda E. Heystek
Florida Bar #0285020
Disability Rights Florida
amandah@disabilityrightsflorida.org
1000 N. Ashley Dr., Suite 640
Tampa, FL 33602
Tel: 850-488-9071
Fax: 850-488-8640
Lead Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was furnished by mail this 15th day of August, 2013 to the following:

Esther Jacobo
Acting Secretary
Department of Children and Families
1317 Winewood Blvd.
Building 1, Room 202
Tallahassee, Florida 32399-0700

Drew Parker
General Counsel
Department of Children and Families
1317 Winewood Blvd.
Building 2, Rm 204
Tallahassee, FL  32399
(850) 922-3947, FAX

Elizabeth Dudek
Secretary
Agency for Health Care Administration
2727 Mahan Drive
Tallahassee, FL 32308

Stuart F. Williams
General Counsel
Agency for Health Care Administration
2727 Mahan Drive, Mail Stop #3
Tallahassee, FL 32308
(850) 921-0158, FAX

_/S/_____
David A. Boyer
Florida Bar #90917
Disability Rights Florida
davidb@disabilityrightsflorida.org
1930 Harrison St., Ste 104
Hollywood, FL 33020
Tel: 850-488-9071
Fax: 850-342-0823