IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

T.W., P.M., and )
DISABILITY RIGHTS FLORIDA, )
on behalf of themselves and all others )
similarly situated, )
 )
    Plaintiffs, )
 )
v. ) Case No. 4:13-cv-00457-RH-CAS
 )
ESTHER JACOBO, in her official )
capacity as Interim Secretary of the )
Florida Department of Children and )
Families; and ELIZABETH DUDEK, in )
her official capacity as Secretary of the )
Agency for Health Care Administration, )
 )
 )
    Defendants. )
                                    )

**DEFENDANT ELIZABETH DUDEK'S MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

      Defendant Elizabeth Dudek, in her official capacity as Secretary of the Agency for Health Care Administration ("AHCA"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1, moves to dismiss AHCA as a Defendant in this action on the grounds that the Complaint fails to state a claim against AHCA upon which relief can be granted and that the Court lacks subject matter jurisdiction because the Plaintiffs lack standing to bring this claim against AHCA.

**INTRODUCTION**

      As described in greater detail below, the Complaint alleges only grievances with the Florida Department of Children and Families ("DCF") that AHCA had no role in creating and that AHCA has no authority to redress. The gravamen of the Complaint is that the State of

Florida has violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("Title II" or the "ADA"), as construed by the Supreme Court in Olmstead v. L.C., 527 U.S. 581 (1999), by requiring certain individuals with mental health conditions to receive services in the custody of the State when treatment could be provided in more community-integrated settings.  AHCA had no role in the placement decisions that gave rise to this action, and AHCA has no authority to provide Plaintiffs with any meaningful relief.  AHCA merely licenses hospitals where Plaintiffs allege that they are required to reside as a condition of receiving services, and even if AHCA had the power to do so, Title II does not obligate public entities such as AHCA to enforce the ADA against their licensees.  For these reasons, Plaintiffs' claim against AHCA should be dismissed.

## BACKGROUND

Plaintiffs in this action are a disability rights advocacy group and two individuals alleged to be committed to the custody of DCF due to mental health disabilities.  The individual Plaintiffs are residing in, but wish to leave, treatment facilities that are operated by DCF.  See Complaint ¶¶ 7-16, 41.  Plaintiffs intend to seek approval of a class consisting of:

a. All individuals committed to DCF custody pursuant to Fla. Stat. § 394.467 who are residing in one of the State's treatment facilities who possess both the desire and capability to reside in the community with or without supports; and

b. Individuals residing in a DCF treatment facility who will possess at a later date the desire and capability to reside in the community with or without supports.

Complaint ¶ 28.

The Complaint alleges that the Defendants violate Title II by requiring these individuals to receive services for their mental health conditions in DCF custody/DCF treatment facilities when treatment could be provided in more community-integrated settings.  The Complaint further alleges that:

2

- DCF is recognized as Florida's mental health authority by the federal Substance Abuse and Mental Health Services Administration, Complaint, ¶ 34;

- DCF oversees Florida's system for prevention, treatment, and care of individuals with psychiatric disabilities, Complaint, ¶ 34; and

- DCF is responsible for planning, managing, and evaluating a statewide program of mental health services and supports, including community programs, and purports to offer such services, Complaint, ¶¶ 36, 37.

Accordingly, the Complaint articulates what Plaintiffs see as DCF's role in causing the injuries alleged in the Complaint as well as DCF's authority to redress the alleged injuries.

By contrast, the Complaint is far less clear in describing how AHCA has caused or contributed to Plaintiffs' alleged injuries, and the Complaint contains no allegations describing AHCA's role in redressing those injuries. The Complaint alleges that AHCA is responsible for administering Florida's Medicaid Program, Complaint ¶ 26; however, the Complaint does not explain how AHCA's role in administration of the Medicaid program is relevant to Plaintiff's alleged injuries. The Complaint does not allege that either of the proposed class representatives or any other class members are Medicaid recipients, nor does the Complaint explain how Florida's Medicaid program contributed to Plaintiffs' commitment to DCF custody in treatment facilities operated by DCF, notwithstanding the fact (as alleged) that DCF offers community-based mental health programs through which Plaintiffs could receive necessary services in more integrated settings.

The Complaint further alleges that AHCA is responsible for licensure, inspection, and regulatory enforcement with respect to hospitals, Complaint ¶¶ 26, 43, 44, and, indeed, the Complaint is accurate in this respect: AHCA administers chapters 395, part I, and 408, part II, Florida Statutes, which govern the licensure and regulation of Florida hospitals. See §§ 395.003(1)(a), 408.802(8), 408.803(1), Fla. Stat. Further, as an incident to AHCA's licensing and regulatory authority over hospitals, § 395.1055(5), Florida Statutes, empowers AHCA to enforce the provisions of the Florida Mental Health Act, chapter 394, part I, Florida Statutes. However, the Complaint does not allege that AHCA has exercised its licensing or regulatory

authority in such a way as to contribute to what the Plaintiffs consider to be disability discrimination. Moreover, the Complaint does not allege—nor would Florida law support the allegation—that AHCA has any authority to enforce the provisions of the ADA against public hospitals or other state agencies, or that AHCA has authority to intervene in placement decisions made by DCF.

## ARGUMENT

### I. Plaintiffs' allegations concerning AHCA's role in licensing public hospitals fail to state a claim upon which relief can be granted against AHCA under Title II.

Title II prohibits public entities, including state agencies, from discriminating against qualified individuals with disabilities on account of those disabilities. 42 U.S.C. §§ 12131, 12132; Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1081 (11th Cir. 2007). To state a claim under Title II, a plaintiff must allege: (1) that he is a "qualified individual with a disability;" (2) that a public entity "excluded [him] from participation in or . . . denied [him] the benefits of the services, programs, or activities of [the] public entity" or otherwise "discriminated [against him];" (3) "by reason of such disability." Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001). In Olmstead v. L.C., 527 U.S. 581 (1999), the Supreme Court held that Title II's anti-discrimination principle could be applied to the provision of public services in institutional settings, and, in certain circumstances, could require the placement of persons with disabilities in community-based settings. Specifically the Court stated that community placement was required (1) "when the State's treatment professionals have determined that a community placement is appropriate"; (2) "the transfer from institutional care to a less restrictive setting is not opposed by the affected individual"; and (3) "the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." Id. at 587. In other words, a state agency violates Title II if it requires disabled individuals who are not opposed to living in the community to reside in institutional settings as a condition of receiving public assistance when the agency could provide the same assistance as effectively and

efficiently in the community without fundamentally altering the public assistance program. See, e.g., Long v. Benson, No. 4:08CV26-RH/WCS, 2008 WL 4571904, at *1 (N.D. Fla. Oct. 14, 2008).

Whatever the merits of Plaintiffs' claim against DCF may be, their claim against AHCA does not fit within the Title II/Olmstead analysis. The Complaint does not allege that AHCA provides the public assistance programs at issue in this case, nor does the Complaint allege that AHCA has any role in making placement decisions. With respect to AHCA, the allegations are limited to AHCA's role in licensure, inspection, and regulatory enforcement of hospitals and certain other healthcare facilities. Complaint ¶¶ 26, 43, 44.[1] However, as provided above, the Complaint does not allege that AHCA has exercised its licensing or regulatory authority in such a way as to contribute to the alleged disability discrimination.

As applied to a public entity's licensing activities, "the scope of Title II is not limitless." Noel v. N.Y.C. Taxi & Limousine Comm'n, 687 F.3d 63, 68 (2d Cir. 2012) (internal quotation marks omitted); Reeves v. Queen City Transp., Inc., 10 F. Supp. 2d 1181, 1185 (D. Colo. 1998). Title II (through its implementing regulations) has been construed by the U.S. Department of Justice ("DOJ") as prohibiting a public licensing authority from (1) "administer[ing] a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability" or (2) "establish[ing] requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(6); see 42 U.S.C. § 12134 (authorizing the Attorney General to promulgate regulations implementing the ADA). However, DOJ's implementing regulations, along with an uninterrupted line of cases construing those regulations, make clear that Title II does not impose on public licensing agencies the additional, derivative responsibility to police the activities of their licensees and make ADA compliance a

---

[1] Plaintiffs also allege that pursuant to § 395.1055(5), Florida Statutes, AHCA is authorized to enforce the provisions of the Florida Mental Health Act, chapter 394, part I, Florida Statutes. However, this power is provided only as an incident to AHCA's role in licensing and regulating hospitals, and, in any event, AHCA has no authority to enforce Title II.

condition of licensure.  Noel, 687 F.3d at 71 ("Title II(A)'s prohibition on discrimination by public entities does not compel public entities to police compliance by the private entities they license."); accord, e.g., Bascle v. Parish, CIV.A. No. 12-1926, 2013 WL 4434911, at *6 (E.D. La. Aug. 14, 2013); Reeves, 10 F. Supp. 2d at 1186-88; Tyler v. City of Manhattan, 849 F. Supp. 1429, 1441-42 (D. Kan. 1994); see also 28 C.F.R. § 35.130(b)(6) ("The programs or activities of entities that are licensed or certified by a public entity are not themselves covered by this part.").

As an example, in Noel v. New York City Tax & Limousine Commission, the Second Circuit held that the defendant taxicab licensing authority was not obligated under Title II "to use its licensing and regulatory authority over the New York City taxi industry to require that taxi owners provide meaningful access to taxis for persons with disabilities."  Noel, 687 F.3d at 74. The court described the gravamen of the plaintiffs' claim as "that there [were] too few accessible taxis in New York City and [the authority] should use its regulatory authority to require that more taxis be accessible."  Id. at 69-70.  The court rejected this claim, and, in doing so, vacated the district court's temporary injunction, on the ground that "no such claim is cognizable under [Title II] against the [authority] because nothing in the [authority's] administration of the licensing program discriminate[d] against persons with disabilities."  Id. at 70.  Indeed, the court arrived at this conclusion notwithstanding the allegation that the authority exercised "pervasive control" over the taxi industry in the city.  Applying the unambiguous language of 28 C.F.R. § 35.130(b)(6), the relevant implementing regulation cited above, the court determined that any such control, "however pervasive it is at this time, does not make the private taxi industry a program or activity of a public entity."  Id. at 72 (internal quotations omitted).  Accordingly, the court held that, while Title II "prohibits the [defendant] from refusing to grant licenses to persons with disabilities who are otherwise qualified to own or operate a taxi[,] . . . it does not assist persons who are consumers of the licensees' product."  Id. at 69.

Similarly, in Tyler v. City of Manhattan, a federal district court dismissed a Title II claim alleging that the defendant City was required to incorporate Title II into its inspection and licensure scheme for regulating liquor stores and drinking establishments.  Tyler, 849 F. Supp. at

6

1442.  The allegation in Tyler was that the City violated Title II by "knowingly issu[ing] liquor licenses and building permits for facilities that are not accessible to persons with disabilities," "fail[ing] to evaluate its licensees for compliance with the ADA," and "fail[ing] to require ADA compliance as a condition for licensure."  Id. at 1441.  The City moved for summary judgment, arguing that the regulations implementing Title II do not cover programs and activities of entities that are licensed by a public entity.  Id.  The court agreed, relying, as did the Second Circuit in Noel, on the unambiguous language of 28 C.F.R. § 35.130(b)(6).  The court held: "Although City programs operated under contractual or licensing arrangements may not discriminate against qualified individuals with disabilities, '[t]he programs or activities of licensees or certified entities are not themselves programs or activities of the public entity merely by virtue of the license or certificate.'"  Id. (emphasis in original; citation omitted).  Accordingly, the court granted the City's motion of summary judgment because "individuals with disabilities are not denied access to such licensed facilities, or to the claimed benefits flowing from the City's inspection of them, by virtue of any act of the City in the manner it conduct[ed] those activities."  Id.

Although the underlying facts are different, this case is materially indistinguishable from Noel, Tyler, and the other cases cited above that analyze the limited application of Title II's antidiscrimination directive to public licensing authorities.  In essence, the Complaint alleges that AHCA should be held derivatively liable for the decisions of others to place members of the putative class in institutional settings, on the theory that AHCA licenses those institutions.  However, the Complaint does not allege that the manner in which AHCA conducts its licensing activities contributes to Plaintiffs' alleged injury.  If anything, the present case presents a stronger argument for dismissal because, unlike the defendant in Noel, there is no allegation in this case that AHCA exercises "pervasive control" over the facilities at issue, see Noel, 687 F.3d at 72, and unlike the defendant in Tyler, there is no allegation in this case that AHCA is "knowingly issuing licenses" to facilities that violate the ADA, see Tyler, 849 F. Supp. at 1441.  "Title II . . . cannot be read to impose strict liability on public entities that neither caused

7

plaintiffs to be excluded nor discriminated against them." Bacon v. City of Richmond, Va., 475 F.3d 633, 639-40 (4th Cir. 2007); see also, e.g., Smith v. Rainey, 747 F. Supp. 2d 1327, 1339 (M.D. Fla. 2010) (dismissing Title II claims based on AHCA and AHCA Secretary's approval of payments for psychotropic drugs because nothing in the complaint "support[ed] Plaintiffs' theory that approving Medicaid payments . . . involves discriminatory conduct under the ADA" and, as to the remaining counts, the complaint "[did] not allege wrongdoing on the part of these Defendants"). Thus to prevail in their claim against AHCA, Plaintiffs must plead and prove that some action attributable to AHCA "caused them to 'be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.'" Bacon, 475 F.3d at 639 (quoting 42 U.S.C. § 12132). Plaintiffs have not done so, and, accordingly, their claim against AHCA must be dismissed.

II. **Plaintiffs' claim against AHCA should be dismissed for lack of Article III standing because AHCA has not caused Plaintiffs' alleged injuries and lacks the power to redress Plaintiffs' alleged injuries.**

In a similar vein, because Plaintiffs have failed to allege any wrongdoing by AHCA, Plaintiffs also lack standing with respect to their claim against AHCA. The "irreducible constitutional minimum" of standing under Article III consists of three elements: an actual or imminent injury, causation, and redressability. E.g., Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1265 (11th Cir. 2011). Plaintiffs' claim against AHCA must be dismissed for lack of standing because they fail to allege sufficient facts to satisfy the causation or redressability prongs of the constitutional standing analysis. See Davis v. Fed. Election Comm'n, 554 U.S. 724, 733–34 (2008) ("Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (internal quotation marks, citations, and alteration omitted)).

While Plaintiffs have alleged an injury (by virtue of the DCF's requirement that they remain in institutions in order to receive mental health services), the Complaint does not allege

8

that any conduct on AHCA's part has contributed to the alleged injury.  The Complaint alleges that Plaintiffs are unreasonably held in DCF's custody, not AHCA's, in treatment facilities operated by DCF, not AHCA, pursuant to a Florida statutory scheme that DCF administers.  As noted above, Plaintiffs do not allege that AHCA has any authority to intervene in DCF's placement decisions or that AHCA otherwise has any involvement in the underlying facts (except to the extent that it licenses the hospitals in which the Plaintiffs and other members of the putative class may reside).  See Complaint ¶¶ 26, 43, 44. Nor do they allege that AHCA's licensing activities have contributed to Plaintiffs' alleged injuries.

The Article III standing requirement requires something more: plaintiffs must allege "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party."  Hollywood Mobile Estates, 641 F.3d at 1265 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  Further, any court-ordered "remedy must be tailored to a violation," because it is "beyond the limits of judicial power to interfere with the operation of entities that have not violated plaintiff's rights."  Bacon, 475 F.3d at 638 (citing Milliken v. Bradley, 418 U.S. 717, 744-45 (1974); Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 16 (1971)).

Plaintiffs here have wholly failed to satisfy this burden with respect to AHCA because, as discussed above, the Complaint fails to include any allegation of an injury caused by AHCA. Their claim against AHCA should be dismissed for this reason alone.  See, e.g., Doe v. Pryor, 344 F.3d 1282, 1285 (11th Cir. 2003) (dismissing case for lack of standing where "[t]he only defendant in this case is the Alabama Attorney General, and the only injuries [the plaintiff] has alleged stem from a state court custody proceeding in which the Attorney General played no role"); Okpalobi v. Foster, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) (dismissing constitutional challenge to state law providing tort remedy against doctors who performed abortions because "[t]he plaintiffs have never suggested that any act of the defendants [attorney general and governor] has caused, will cause or could possibly cause any injury to them").  Plaintiffs have

9

not alleged that AHCA has done anything wrong, and AHCA should not be required to remain in this action solely to defend DCF's conduct.

Plaintiffs' claim against AHCA must be dismissed under the redressability prong of the standing analysis as well, because AHCA has no authority to redress the alleged injury. "[I]n a suit against state officials for injunctive relief, a plaintiff does not have Article III standing with respect to those officials who are powerless to remedy the alleged injury." Scott v. Taylor, 405 F.3d 1251, 1259 (11th Cir. 2005) (Jordan, D.J., sitting by designation, concurring). The Complaint does not explain how the requested injunction against AHCA could provide Plaintiffs with any meaningful relief. See, e.g., Okpalobi, 244 F.3d at 426-27.

In this respect, Plaintiffs' claim against AHCA is materially indistinguishable from the ADA claim against the City of Chicago, which was dismissed by the district court in Swan v. Board of Education of the City of Chicago, -- F. Supp. 2d ---, No. 13 C 3623, 2013 WL 3455860 (N.D. Ill. July 9, 2013). The plaintiffs in that case sued both the city's board of education and the city itself, alleging that school closings within the city violated Title II. In dismissing the plaintiffs' claim against the city, both for failure to demonstrate standing and for failure to state a claim under Title II, the court explained that "although the City is a 'public entity' under Title II, it is not the 'public entity' that provides [Chicago public schools] services, programs, or activities." Id. at *5 (emphasis in original).

Likewise, here, AHCA may be (and is) a public entity under Title II. But AHCA is not the public entity that allegedly caused, or that can redress, Plaintiffs' alleged injuries. Plaintiffs' claim against AHCA is in this case is no different than that of the City of Chicago in Swan, because AHCA has no role in the challenged placement decisions involving the named Plaintiffs and their putative class, and AHCA has no power to enforce the ADA.

Moreover, Florida agencies are creatures of state statute, possessing only those powers specifically conferred to them by the Florida Legislature. See, e.g., Pesta v. Dep't of Corr., 63 So. 3d 788, 790 (Fla. 1st DCA 2011). Florida agencies are powerless to enlarge, modify, or contravene their enabling statutes through their actions or rules. § 120.52(8), Fla. Stat. (defining

"invalid exercise of delegated legislative authority" as "action that goes beyond the powers, functions, and duties delegated by the Legislature"); Campus Commc'ns, Inc. v. Dep't of Rev., 473 So. 2d 1290, 1291 n.1 (Fla. 1985). The Florida Legislature has made clear that "[s]tatutory language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than implementing or interpreting the specific powers and duties conferred by the enabling statute." § 120.52(8)(f), Fla. Stat.

Plaintiffs do not allege that AHCA possesses a greater role, and Florida law would not support such an allegation. As provided above, AHCA administers Florida laws governing the licensure and regulation of Florida hospitals (chapters 395, part I, and 408, part II, Florida Statutes). See §§ 395.002(2), 395.003(1)(a), 408.802(8) & 408.803(1), Fla. Stat. As an incident to that licensing and regulatory authority over hospitals, § 395.1055(5), Florida Statutes, provides AHCA with certain very limited enforcement powers to AHCA relative to the provisions of the Florida Mental Health Act, chapter 394, part I, Florida Statutes, involving the voluntary and involuntary admission to hospitals providing psychiatric services. This authority is narrowly limited to patient rights, standards of care, examination and appropriate placement procedures, designed to ensure that when patients are discharged, they are discharged to a safe environment. AHCA has no part in directing or mandating that a patient must be discharged from a hospital or in effectuating the placement of hospital patients. Further, and in any event, nothing in AHCA's enabling statutes authorizes AHCA to enforce any provisions of the ADA against any of the public or private entities that AHCA regulates, and, accordingly, AHCA cannot enforce the ADA against any of these entities without violating Florida law. § 120.52(8)(b), (8)(c), Fla. Stat.; Campus Commc'ns, 473 So. 2d at 1291 n.1.

The district court in Swan held under analogous circumstances that "if a defendant does not have the authority to carry out the injunction, a plaintiff's claim for injunctive relief must be dismissed because the Court cannot enjoin a defendant to act in any way that is beyond the defendant's authority in the first place." 2013 WL 3455860, at *3 (internal quotation marks and alterations omitted). This Court should hold the same here.

11

Indeed, this Court has held the same in analogous cases. As an example, this Court granted AHCA's motion to dismiss in <u>Washington v. DeBeaugrine</u>, 658 F. Supp. 2d 1332 (N.D. Fla. 2009), which was a procedural due process challenge to the State of Florida's mechanism for implementing a change to a Medicaid waiver program that resulted in reductions in services to some recipients. The challenge in <u>Washington</u> arose directly out of the State of Florida's administration of a component of the State's Medicaid program. <u>Cf.</u> § 409.902, Fla. Stat. (designating AHCA as Florida's single state agency authorized to make payments for medical assistance and related services under Title XIX of the Social Security Act). The Court dismissed AHCA in that case because AHCA had no role in administering the waiver program. <u>Id</u>. at 1338. The grounds for dismissal of AHCA are even stronger here. The claim in this case relates to decisions made pursuant to Florida's Mental Health Act, which AHCA has no role in making and no ability to control. Accordingly, Plaintiffs' claim against AHCA is due to be dismissed for lack of standing.

## **CONCLUSION**

For the foregoing reasons, Defendant Elizabeth Dudek respectfully requests that Plaintiffs' claim against AHCA be dismissed with prejudice.

DATED this <u>13th</u> day of September, 2013.

                                                             Respectfully submitted,

                                                             <u>/s/ Erik M. Figlio</u>
                                                             ERIK M. FIGLIO
                                                             Florida Bar No.: 0745251
                                                             RICHARD DORAN
                                                             Florida Bar No.: 0325104
                                                             Ausley & McMullen, P.A.
                                                             Post Office Box 391
                                                            Tallahassee, FL  32301
                                                            (850) 224-9115

                                                            ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF this 13th day of September, 2013 to:

| | |
|---|---|
| David Boyer | Amanda E. Heystek |
| Disability Rights Florida | Disability Rights Florida |
| 1930 Harrison Street, Suite 104 | 1000 N. Ashley Drive, Suite 640 |
| Hollywood, FL 33020 | Tampa, FL 33602 |
| davidb@disabilityrightsflorida.org | amandah@disabilityrights.org |

                              /s/ Erik M. Figlio
                              Attorney