IN THE UNITED STATES DISCRIT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

T.W., P.M. and DISABILITY RIGHTS
FLORIDA, on behalf of themselves
and all others similarly situated,

v.                                      CASE NO. 4:13-CV-457-RH/CAS

MICHAEL CARROLL, in his official capacity
as Secretary of the Department of
Children and Families.
_____/

## SETTLEMENT AGREEMENT

I. INTRODUCTION
   A. The Plaintiffs filed this lawsuit seeking declaratory and injunctive relief on behalf of persons with mental illness residing in Florida state mental health hospitals. Specifically, the Complaint alleged that Florida's mental healthcare system was in violation of Title II of the Americans with Disabilities Act by not providing adequate community placements for individuals ready to be discharged from the hospitals. The Plaintiffs and the Defendant ("DCF") have worked diligently with an expert and a series of informal meetings to reach an agreement to settle this litigation. The Court has stayed this case during these negotiations. Upon execution of this Settlement Agreement, the Plaintiff agrees to voluntarily dismiss the case without prejudice.
   B. The Agreement of the parties is as follows:

II. IMPLEMENTATION PLAN
   C. Pilot project for improving utilization of Florida Assistive Community Treatment (FACT) resources and community supports.
      1. DCF agrees to request funding, preferably recurring, from the Florida Legislature to initiate a pilot project designed to more fully utilize existing FACT resources and thereby create additional opportunities for community integration of Floridians utilizing substance abuse and mental health services. A review of FACT discharge data has shown that very few FACT participants ever leave the program as a result of increased stability and subsequent transition to a lower level of care, which DCF hypothesizes may be occurring because FACT participants who clinically and functionally are ready for lower levels of care may nonetheless not be transitioned because they risk losing their housing subsidy. DCF agrees to request funding for the purpose of testing this theory; more

specifically, DCF agrees to request funding for a pilot transition voucher initiative to assist individuals to transition out of FACT teams while maintaining access to housing. Participants would receive a combination of long-term housing, treatment, and supportive services with the hope that these services will lead to improved residential stability and reductions in substance use and psychiatric symptoms, and which, in turn, would open FACT slots that would be made available to individuals who are awaiting discharge from state mental treatment facilities.

2. Contingent on funding and direction from the Legislature, DCF agrees to develop a pilot project with the following general parameters:
    a. FACT participants identified as meeting criteria for transitioning out of FACT would be provided with a voucher that would allow them to purchase services and supports in the community (including rental assistance) from vendors of their choice. Conceptually, a care coordinator would be responsible for enrolling eligible individuals and management of the voucher, with fiscal accountability placed within the Managing Entities. DCF would also need to develop a menu of allowable services and supports based on ch. 65E-14.021, F.A.C., as well as expectations for transition to other fund sources based on factors such as subsequent access to disability benefits, insurance, employment, or other available housing options. The Parties anticipate the number of FACT participants that could benefit from the pilot to be approximately 100; however, the Parties recognize that the actual number of participants will depend on fact-specific determinations made by treating professionals and not presently known to the Parties.
    b. The pilot would be implemented in one or more of the following areas: Circuit 4 (Duval, Clay, and Nassau Counties); Circuit 6 (Pasco and Pinellas Counties); and Circuit 13 (Hillsborough County).
    c. If DCF obtains the appropriate approvals from the Legislature, and funds are approved during FY 2015-16 for use during FY 2016-17, DCF could begin in FY 2015-16 to develop program specifications, rules, and guidelines; work with managing entities, treatment facility staff, and providers to develop an implementation plan; and identify and begin to engage potential FACT participants to transition into the pilot program.
    d. The Parties recognize that the success of the pilot may require patience: transitions will take time, and it is imperative that FACT teams are not overwhelmed by numerous discharges and admissions at one time.

D. Enhancing current practices and policies

1. Defendant agrees to provide to Plaintiff any assessment tool for determining the housing and service needs and preferences of each hospital resident who has been determined ready for discharge, including for supported housing within fifteen days of the effective date of this agreement. Plaintiff will provide input on such assessment tools within sixty days thereafter. Defendant agrees to evaluate any such recommendations in good faith and to pursue any changes Defendant believes to be necessary, whether or not those changes necessitate rulemaking.
2. Defendant agrees to provide Plaintiff or qualified third parties access to its facilities in order to conduct "in-reach" activities by supported housing providers to help individuals in the hospitals make decisions regarding living in supported housing.
3. Defendant agrees to provide to Plaintiff any transition-planning protocol currently in existence. If one is not in existence, Defendant agrees to develop such protocol as an operating procedure or by rule if necessary. Plaintiff will provide input on such protocol within sixty days in order to ensure that transition planning involves a representative from the individual's Managing Entity and includes the most integrated housing option appropriate to the individual's needs and preferences.

III. AGREEMENT
   A. The parties agree that the Implementation Plan is structured to resolve all issues which have been raised in the Complaint in this case and shall be implemented.
   B. Defendants have entered in to this Agreement in order to avoid the necessity of litigation. Nothing in this Settlement Agreement shall be construed as an admission of liability by Defendant, and this Settlement Agreement cannot be used as an admission by any Party in this or any other proceeding.
   C. The Implementation Plan and this Settlement Agreement are the products of extensive negotiation and resulting compromise by both Plaintiffs and Defendant.
   D. The Parties may schedule meetings of representatives for the Plaintiffs and the Defendant to discuss the Implementation Plan as necessary. The Parties agree that free, open, and frank discussions of problems, limitations, and successes will further the achievement of the goals of this Implementation Plan.
   E. All Parties agree to bear their own costs and fees associated with this litigation.
   F. In order to facilitate the execution of this Agreement, the Agreement may be signed in counterparts. A complete set of original signatures, whether in counterpart or otherwise, shall be maintained by Disability Rights Florida in conjunction with the case file in this matter.
   G. Plaintiffs agree to file a Notice of Voluntary Dismissal Without Prejudice in this case upon receipt of a fully executed Settlement Agreement.
   H. The Parties agree that the sole remedy for enforcement of this Settlement Agreement is by motion to enforce the Settlement Agreement. The Parties

expressly waive any right to enforce this Settlement Agreement by collateral breach of contract claim.

IN WITNESS WHEREOF, the parties to this Settlement Agreement have executed the same, through the signatories below:

Dated: 9/15/15

Rebecca Kapusta, General Counsel
Florida Dept of Children and Families

Dated: 9/15/2015

Maryellen McDonald, Executive Director
Disability Rights Florida

Dated: Sept 9 2015

Pamela Mathieson

The foregoing Settlement Agreement was explained to the appropriate parties and executed in accordance with our directions and advice.

Disability Rights Florida

Dated: 9/15/15

By: David A. Boyer
Attorney for Plaintiffs

Dated: 9/15/15

By: Erik M. Figlio
Attorney for Defendant